Filed by *CW*   D.C.

ELECTRONIC

**Sep 11 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 06-21916-CIV-HUCK/SIMONTON

| | |
|---|---|
| **PRONTO CASH OF FLORIDA, INC. f/k/a** | ) |
| **PAYDAY ADVANCE, INC. d/b/a** | ) |
| **PRONTO CASH,** a Florida corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| **v.** | ) |
| | ) |
| **DIGITAL CURRENCY SYSTEMS, INC.,** a | ) |
| foreign corporation | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
AMENDED MOTION TO TRANSFER VENUE**

Plaintiff Pronto Cash of Florida, Inc. f/k/a Payday Advance, Inc. ("Pronto"), by and through its attorneys, files its response to Defendant's Amended Motion to Transfer Venue, which should be denied because Pronto never agreed to the subject forum selection clause and the Northern District of Illinois is an inconvenient forum.

## I. INTRODUCTION

Despite the fact that Defendant Digital Currency Systems, Inc. ("Defendant") embraced venue in the Southern District of Florida for purposes of removing Pronto's state court action to this Court,[1] Defendant now seeks to transfer venue from this Court to the Northern District of Illinois based on its argument that Pronto agreed to a forum selection clause. The forum selection clause relied upon by Defendant, however, is not valid because Pronto's President

---

1  Defendant alleged "[t]he Southern District of Florida is the judicial district embracing the place where the state court action was brought and is therefore the proper district court to which this case should be removed. Moreover, the Miami Division is the proper division within the Southern District of Florida to which this case should be removed. *See* Defendant's Notice of Removal, ¶ 10 (citations omitted).

Greenberg Traurig, P.A. | Attorneys at Law | 401 East Las Olas Boulevard | Suite 2000 | Fort Lauderdale, FL 33301 | Tel 954.765.0500 | Fax 954.765.1477 | www.gtlaw.com

1 of 24

15pa

Adam Segan never agreed to it orally, in writing or otherwise.  Even if this Court finds that Pronto did agree to the subject forum selection clause – which it did not – the transfer of venue is still inappropriate because the forum selection clause does not encompass all of Pronto's claims asserted in this action and a transfer of some of the claims to the Northern District of Illinois would result in piecemeal litigation.  Further, most of the witnesses and sources of proof in this action are located in the Southern District of Florida, and thus, the Northern District of Illinois is an inconvenient forum.  Accordingly, Pronto respectfully requests that this Court deny Defendant's motion to transfer venue.

## II. FACTUAL BACKGROUND

Pronto is a leading provider of check cashing, money order and foreign currency exchange services throughout Florida and neighboring southern states.  *See* Declaration of Adam Segan ("*Segan Dec.*"), ¶ 3, a copy of which is attached hereto as Exhibit "1," and incorporated herein by reference.  Pronto utilizes a check cashing and related computer software system as an integral part of its business operation.  *Id.*  In April 2005, Pronto was considering converting to a brand new system and approached Defendant with regard to same.  *Id.* at ¶ 4.  Based on Defendant's representations to Pronto that it could provide Pronto with a greatly improved and fully integrated software system, Pronto and Defendant entered into an oral agreement (the "Oral Agreement") for the purchase of the integrated software system, installation of the software system, and training on the software system.  *Id.*  Defendant began working on the new system based upon the terms of the Oral Agreement and prior to providing Pronto with any purchase orders.  *Id.* at ¶ 5.  In certain instances, Defendant performed work and delivered goods to Pronto pursuant to the Oral Agreement without an executed purchase order and simply invoiced Pronto for the cost of the work and goods provided.  *Id.* at ¶ 6.

CASE NO. 06-21916-CIV-HUCK/SIMONTON

Defendant asserts that the material terms of the Oral Agreement are contained in several purchase orders (the "Purchase Orders") some of which are signed by Adam Segan ("Mr. Segan"), Pronto's President. Although the Purchase Orders reference a general software licensing agreement, Pronto was never provided with a copy of any software licensing agreement prior to its execution of the Purchase Orders and the Purchase Orders do not specify that they are presently "subject to" any software licensing agreement.[2]  *Id.* at ¶ 7.  Further, the software licensing agreement attached to Defendant's motion to transfer venue was not attached to or otherwise provided with the Purchase Orders.  *Id.* at ¶ 8.  Pronto was not even aware of the forum selection clause until Defendant filed its motion to transfer venue.  *Id.* at ¶ 9.  Moreover, the Purchase Orders specifically provided that Pronto *would* agree to the terms of a software licensing agreement *upon* implementation of the subject software.  *Id.* at ¶ 10.  As set forth in the Complaint, the subject software has not been implemented due to Defendant's failure to deliver a reliable, operational, and integrated system.  *Id.*  The system provided by Defendant is not functional as evidenced by the fact that not even Defendant could reconcile the data generated by its own system.  *Id.*  Thus, the software licensing agreement was not agreed to by way of Pronto's execution of the Purchase Orders.

The software licensing agreement was also not electronically agreed to by Pronto during the attempted installation of the subject software.  The Oral Agreement contemplated the installation of the software onto Pronto's main computer servers located in downtown Miami, Florida, and the computer systems of its retail locations and mobile units.  *Id.* at ¶ 11. During the attempted installation of the software onto Pronto's main computer servers, Pronto did not

---

2   Defendant asserts that it is Defendant's company policy to fax a copy of the software licensing agreement to customers and asserts that Defendant faxed a copy of the agreement to Pronto prior to the execution of the Purchase Orders .  Defendant, however, fails to attach the fax confirmation indicating that the software licensing agreement was in fact sent to Pronto.  Pronto does not have any such fax in its business records.  *See Segan Dec.*, ¶ 8.

CASE NO. 06-21916-CIV-HUCK/SIMONTON

electronically agree to the clickwrap terms. *Id.* at ¶ 12. In fact, because Defendant was the one installing the software, any agreement to the clickwrap terms must have been made by Defendant's representative, not Pronto. *Id.* Under these circumstances, Pronto was deprived of any opportunity whatsoever to question the terms of the software license agreement, object to its terms, or offer any alternate terms. *Id.*

In regards to the installation of the software at Pronto's retail locations and mobile units, Pronto's President Adam Segan (the authorized individual who entered into the Oral Agreement and executed some of the Purchase Orders) absolutely did not accept the clickwrap terms. *Id.* at ¶ 14. To the extent an employee at a retail location or mobile unit did accept the clickwrap terms, such employee was not authorized to enter into an agreement on behalf of Pronto. *Id.* at ¶ 15. Accordingly, Pronto did not accept the software licensing agreement by way of electronic acceptance of the clickwrap terms.

In any event, this lawsuit is not "under" the software license agreement, and therefore the forum selection clause is inapplicable to this litigation. Pronto's Complaint is predicated on breaches of oral promises and representations regarding the timing of installation and the effect this software would have on Pronto's business – subjects not addressed in the software license agreement – and thus does not constitute "legal actions hereunder."

Aside from Pronto never agreeing to litigate this dispute in Illinois, this matter should not be transferred to Illinois because Illinois' relation to this case is attenuated at best. In fact, the only connection that Illinois has to this matter is that Defendant and its records are located there. Defendant has responded to Pronto's request for production of documents and has already produced some of its records here in the Southern District. The Southern District of Florida is the only convenient forum because most of the witnesses and record evidence are located here.

CASE NO. 06-21916-CIV-HUCK/SIMONTON

Specifically, as alleged in the Complaint, the software system was supposed to provide Pronto with a greatly improved software system. Defendant's failure to implement fully the "improved" software system resulted in Pronto's inability to reconcile daily financial information. *Id.* at ¶ 18. Proof of the system's failure could require the production of thousands of pages of daily financial reports showing the lack of reconciliation, all of which are located in South Florida. *Id.* Pronto has no less than twelve (12) employees residing in South Florida who have personal knowledge regarding the system's failure and who could be called to testify at trial. *Id.* at ¶ 19. Defendant's failed computer system was loaded onto Pronto's main computer servers, and the computer systems of 17 retail locations and 22 vehicles – all of which are located in Florida. *Id.* at ¶ 20. Any experts engaged to analyze and test the failed system will necessarily have to travel to Florida. Pronto would be severely prejudiced by the transfer of this matter to Illinois, a venue to which Pronto never agreed.

### III. MEMORANDUM OF LAW

**A.**   ***Standard For Evaluating Motion To Transfer Venue***

When a case is properly removed on diversity grounds to a federal district court in the district where the state action was pending, venue in that district court is established as a matter of law, and the defendant cannot move to transfer for improper venue under 28 U.S.C. § 1406. *Thunder Marine, Inc. v. Brunswick Corp.*, 2006 WL 1877093 (M.D. Fla. July 6, 2006). A removing defendant may, however, seek to transfer the venue pursuant to 28 U.S.C. § 1404(a), which authorizes the district court to transfer the action to another district where it might have been brought for the convenience of the parties and witnesses and for the interests of justice. *Id.*; 28 U.S.C. § 1404(a).

5

g Young, P.A. | Attorneys at Law | 305 Las Olas Boulevard | Suite 700 | Fort Lauderdale FL 33301 | Tel 954.765.0500 | Fax 954.765.1477 | www.gglaw.com

CASE NO. 06-21916-CIV-HUCK/SIMONTON

Where, as here, the Defendant seeks a venue transfer based on a forum selection clause, the Defendant must first prove that the forum selection clause is valid. *D/H Oil & Gas Co. v. Commerce and Industry Ins. Co.*, 2005 WL 1153332 (N.D. Fla. May 9, 2005). Even if Defendant meets this burden, the existence of a valid forum selection clause is not a dispositive factor in the court's determination. *Id.* The court must also consider the convenience of the forum selected, the fairness of the transfer in light of the forum selection clause and the parties' relative bargaining power. *Id.* With regard to the private interest factors, the court should consider the convenience of the parties and witnesses, the relative ease of access to sources of proof and the availability of process to compel the presence of unwilling witnesses. *Id.*

As set forth below, because Defendant has not met its burden to prove the existence of a valid forum selection clause and because the Northern District of Illinois is an inconvenient forum, Defendant's motion to transfer venue must be denied.

**B.      _Pronto Never Agreed to the Forum Selection Clause_**

The attached Declaration of Pronto's President Adam Segan clearly shows that Pronto never agreed to the forum selection clause. Defendant responds that the forum selection clause is nonetheless enforceable because: (i) Pronto executed Purchase Orders which purportedly incorporated the software licensing agreement by reference; and (ii) Pronto electronically agreed to the terms of the software licensing agreement by allegedly accepting the clickwrap terms during the software installation process. As set forth below, however, the software licensing agreement was *not* incorporated by reference into the Purchase Orders, and Pronto did *not* agree to the clickwrap terms during the installation process because it was installed by Defendant, not Pronto. Accordingly, Pronto's choice of the Southern District of Florida as the venue for the litigation it initiated should not be overturned.

6

CASE NO. 06-21916-CIV-HUCK/SIMONTON

1.   **The Software Licensing Agreement Was Not Incorporated**
     **By Reference Into The Purchase Orders**

   a.   **The Software Licensing Agreement Was Not Incorporated**
        **By Reference Into The Purchase Orders Because**
        **Its Terms Were Never Provided to Pronto**

The software licensing agreement, which contains the forum selection clause, was not incorporated by reference into the Purchase Orders under Florida law, because its terms were not provided to Pronto.  The doctrine of incorporation by reference requires: "when a contract refers to another document it must not only expressly refer to the document, but it must also sufficiently describe the document." *Affinity Internet, Inc. v. Consolidated Credit Counseling Services, Inc.*, 920 So. 2d 1286, 1288 (Fla. 4th DCA 2006). In *Affinity Internet*, a collateral document containing an arbitration provision was held not to have been incorporated by reference into the parties' contract because the plaintiff was not provided with a copy of the collateral document, and therefore could not have intended to be bound by that collateral document in executing the contract which purported to incorporate it.  *Id.* at 1289.

Accordingly, the existence of terms providing for other terms elsewhere is not all that is required to make such other terms binding: "**The terms must actually be provided**." *Gustavsson v. Washington Mutual Bank, F.A.*, 850 So. 2d 570, 573 (Fla. 4th DCA 2003) (emphasis supplied) (holding that plaintiff was not bound by arbitration provision in collateral document where the collateral document was not provided to plaintiff).

In *Gustavsson*, the plaintiff signed a copy of the front page of a signature card which expressly stated that by signing the plaintiff "agrees to the terms and conditions as listed on the back of the signature card." *Id.* at 572.  Because the plaintiff had not been provided a copy of the referenced reverse side of the signature card and of the terms to which it had purportedly agreed, the plaintiff could not be bound by those terms. *Id.* at 573-74.

7

Similarly, in the instant case, Pronto was not provided with the software licensing agreement at or near the time it executed the Purchase Orders. *See Segan Dec.*, ¶ 7. In fact, the first time it received a copy of the software licensing agreement attached as Exhibit "A" to the Motion was after this lawsuit was filed and after it received Defendant's Motion. *Id.* at ¶ 16. Although Defendant claims that the software license agreement attached as Exhibit "A" to the Motion was faxed to Pronto, Defendant has failed to produce: (i) a copy of the facsimile cover sheet purportedly transmitting the document to Pronto; (ii) a copy of the facsimile confirmation sheet acknowledging receipt of it by Pronto; or (iii) any other written proof (such as a signed or initialed copy of the software license agreement) confirming that the document was actually provided to Pronto. Moreover, Pronto has reviewed its files and has determined that it did not receive a copy of the document. *Id.* at ¶ 8.

> **b.    The Software Licensing Agreement Was Not Incorporated By Reference Into The Purchase Orders Because The Purportedly Faxed Agreement Differed From the Clickwrap**

Moreover, even assuming Defendant could establish that Pronto actually received the software licensing agreement at or near the time it executed the Purchase Orders – which it cannot – Defendant readily acknowledges the terms of document it claims it provided to Pronto differs from the terms of the clickwrap. *See* Motion, p.3 n.2. Defendant attempts to minimize the distinction by arguing that the terms which are important to Defendant are the same in both documents. Defendant appears content to cherry pick the terms of the Purchase Orders and software license agreement that benefit its position without regard to whether Pronto actually intended to be bound by them. Since the software license agreement Defendant seeks to enforce was not in existence and was not provided to Pronto at the time of the Oral Agreement or at the time Pronto executed the Purchase Orders, Pronto cannot have intended to be bound by its terms.

CASE NO. 06-21916-CIV-HUCK/SIMONTON

The forum selection clause in the software licensing agreement is thus not incorporated by reference into the Purchase Orders because Pronto was not provided with the terms contained within the specific software licensing agreement to which it allegedly agreed to "by reference" in those Purchase Orders.

> c.   **The Software Licensing Agreement Was Not Incorporated By Reference Into The Purchase Orders Because The Condition Precedent Never Occurred**

Furthermore, the doctrine of incorporation by reference also does not apply because there must be "some expression in the incorporating document of an intention to be bound by the collateral document." *Affinity Internet*, 920 So. 2d at 1288. The express language in the Purchase Orders provides, in part, that "*[u]pon implementation of any software contained herein, purchaser agrees to all terms, conditions, and limitations of software licensing agreement.*" (Emphasis supplied). This language is simply not sufficient to indicate the requisite present intent by Pronto for the Purchase Orders to be presently "subject to" the software licensing agreement. *Id.* at 1288.

To the contrary, the clear meaning of the purported incorporating language merely indicates that Pronto **will** be bound by the software licensing agreement **when** or **if** the software is implemented. The plain language of the purported incorporating provision refers to Pronto's conditional agreement to be bound by the software licensing agreement at some point in the future. Because the subject language refers to a condition precedent which must occur some time in the future, it cannot be interpreted to mean that the Purchase Orders signed by Pronto are presently subject to the software licensing agreement. If the parties intended the Purchase Orders to be subject to the software licensing agreement, the condition precedent to Pronto's

CASE NO. 06-21916-CIV-HUCK/SIMONTON

agreement to be bound, namely the implementation of the software, would not have been specified.

Moreover, the condition precedent to Pronto's agreement to be bound by the software licensing agreement has *not* occurred, and therefore the projected incorporation by reference never occurred, because the software has never been fully implemented according to the Oral Agreement. Specifically, the software was never functional and Pronto was forced to revert to its old software system. *See Segan Dec.*, at ¶ 10. Because the software was never implemented, the condition precedent in the purported incorporating language was never satisfied. Accordingly, the Purchase Orders cannot be deemed to be subject to the software licensing agreement or its forum selection clause.

### d.     Defendant's Citations Are Inapposite

Defendant's citations to *Salco Distribs., LLC v. iCode, Inc.*, 2006 WL 449156 (M.D. Fla. Feb. 22, 2006) and *Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So.2d 627 (Fla. 1st DCA 1999) are readily distinguishable.

Unlike the plaintiff in *Salco*, Pronto: (i) was not provided with an evaluation CD of the software including a copy of the licensing agreement required for use of the software; (ii) did not execute any purchase orders which expressly stated that the purchase order was presently "subject to" the conditions of a licensing agreement; (iii) was not provided with a software installation CD enclosed in an envelope with the software license agreement printed on the exterior of the envelope; (iv) was not informed that by opening the envelope Pronto agreed to be bound by the terms of the software license agreement; and (v) did not proceed to open any such envelope and retrieve such software. *See Segan Dec.*, at ¶ 13.

10

CASE NO. 06-21916-CIV-HUCK/SIMONTON

Similarly, unlike the plaintiff in *Mgmt. Computer Controls*, Pronto: (i) did not execute any purchase orders which expressly provide that the software license agreement was presently "incorporated herein by reference, as though fully set forth;" (ii) did not have access to the software license agreement before it executed the Purchase Orders; (iii) did not receive software packages with the software license agreement affixed to the outside of the box; and, (iv) did not receive software packages with an orange sticker bearing any warning that by "opening this packet, you indicate your acceptance of [Defendant's] license agreement."

### 2.    Pronto Did Not Agree To The Clickwrap Terms

Defendant's self-serving statements to the contrary, it is undisputed that Pronto did not agree to the clickwrap terms during the installation of the software onto Pronto's main computer servers. A prerequisite to the existence of an enforceable contract is reciprocal assent to certain and definite terms. *Acosta v. Miami-Dade Community College*, 905 So. 2d 226 (Fla. 3d DCA 2005). This general contract principle applies to all agreements, including clickwrap agreements. Thus, while it is true that clickwrap agreements are enforceable when the end user electronically agrees to the terms, where there is no affirmative act indicating acceptance of the clickwrap terms, the terms are unenforceable against the end user. *See Salco Distributors, LLC v. Icode, Inc.*, 2006 WL 449156 (M.D. Fla. February 22, 2006); *Specht v. Netscape Communications Corp.*, 150 F.Supp. 2d 585 (S.D.N.Y. 2001).

During the installation of the software onto Pronto's main computer servers, Defendant was the one responsible for performing the installation pursuant to the terms of the Oral Agreement. *See Segan Dec.*, at ¶ 12. Thus, when the clickwrap acceptance option appeared on the computer screen, it was *Defendant's* representative who was installing the software – *not* Pronto – who electronically agreed to the terms. *Id.* Pronto absolutely did not manifest any form

CASE NO. 06-21916-CIV-HUCK/SIMONTON

of assent to the clickwrap terms during the installation of the software onto Pronto's main computer servers *because Pronto did not install the software*. Even if Pronto "did not question the terms, object to them, or offer any alternate terms," as Defendant argues, it would have resulted from Pronto being deprived of any opportunity to do so because *Defendant was the one actually accepting its own terms. Id.*

Even during installation of the software at Pronto's retail locations and mobile units, Pronto's President Adam Segan (the authorized Pronto representative who entered into the Oral Agreement and executed some of the Purchase Orders) absolutely did *not* accept the clickwrap terms. *Id.* at ¶ 14. Defendant offers no evidence to contradict this statement. To the extent some employee at a retail location or mobile unit may have accepted the clickwrap terms, any such employee would not have been authorized to enter into any such agreement on behalf of Pronto. *Id.* at ¶ 15. Accordingly, any acceptance by an employee at a retail location or mobile unit is unenforceable against Pronto.

Nor can it be argued that Pronto ratified any acceptance of the clickwrap terms by an employee at a retail location or a mobile unit. The Florida Supreme Court in *Frankenmuth Mut. Ins. Co. v. Magaha*, 769 So. 2d 1012 (Fla. 2000), limited the doctrine of ratification under Florida contract law:

> In the vintage opinion of *Ball v. Yates*, . . . 29 So.2d 729, 732 (1946), this Court stated, 'Before ratification will be implied of an act of an unauthorized agent it must be made to appear that the principal has been fully informed and that he has approved.' In *Peninger*, 603 So.2d at 58, the Fifth District Court of Appeal expounded upon the general pronouncement made by this Court in *Ball*:
>
>> An agreement is deemed ratified where the principal has full knowledge of all material facts and circumstances relating to the unauthorized act or transaction at the time of the ratification. . . . An affirmative showing of the principal's intent to ratify the act in question is required. . . . Moreover,

CASE NO. 06-21916-CIV-HUCK/SIMONTON

> the issue of whether an agent's act has been ratified by the principal is a question of fact. . . .

> * * *

> Before one may infer that a principal ratified an unauthorized act of his agent, the evidence must demonstrate that the principal was *fully informed* and that he approved of the act.

*Id.* at 1021-22 (emphasis in original) (citations omitted). The *Magaha* court also acknowledged that constructive knowledge does not apply to the doctrine of ratification:

> It is generally the rule that the doctrine of constructive knowledge does not apply to bring about ratification. The principal is charged only upon a showing of full knowledge, and not because he had notice which should have caused him to make inquiry, which in turn would brought to his attention the knowledge of the unauthorized act of the employee. 2 Fla.Jur.2d, *Agency and Employment*, § 52 at page 204 (1977). . . . There is no duty imposed upon the principal to make inquiries as to whether his agent has carried out his responsibilities. The principal 'has a right to presume that his agent has followed instructions, and has not exceeded his authority.'

*Id.* (citations omitted); *see also Deutsche Credit Corp. v. Peninger*, 603 So. 2d 57, 58 (Fla. 5th DCA 1992) ("[a]n agreement is deemed ratified where the principal has full knowledge of all material facts and circumstances relating to the unauthorized act or transaction at the time of the ratification").

In the instant case, the simple fact that certain software was installed on Pronto's computer systems at the retail locations and mobile units is not evidence of Pronto's ratification of any acceptance by its employees of the clickwrap terms. As the principal, Pronto did not have full knowledge of all material facts and circumstances relating to the alleged acceptance of the clickwrap terms and in no way intended to ratify the acceptance of the clickwrap terms or its forum selection clause. *See Segan Dec.*, at ¶ 16. In fact, Pronto did not become aware that the

13

CASE NO. 06-21916-CIV-HUCK/SIMONTON

clickwrap terms were purportedly accepted until Defendant filed the instant motion to transfer venue. *Id.*

Defendant also cannot argue that Pronto had constructive knowledge of the existence of the clickwrap agreement and had a duty to make inquiry. According to the Florida Supreme Court's decision in *Magaha*, *supra*, the doctrine of constructive knowledge does not apply to the doctrine of ratification and Pronto, in this instance, owed no duty of inquiry as it had a right to presume that its employees had not exceeded their respective authority. Accordingly, regardless of whether or not there was *constructive* knowledge or notice to Pronto of any clickwrap agreement at Pronto's retail locations or mobile units, there certainly was not *actual knowledge* of the principal which is required as a predicate to ratification of any clickwrap agreement by an unknown employee at some unspecified retail location or mobile unit.

Because there is no evidence Pronto accepted – or ratified any alleged unauthorized acceptance – of the clickwrap terms or the forum selection clause, Pronto's choice of the Southern District of Florida as the venue for this action should not be disturbed.

C.   ***The Forum Selection Clause Does Not Encompass All Of Pronto's Claims***

Assuming *arguendo* this court finds that Pronto did agree to the clickwrap terms, the forum selection clause contained therein still should not be enforced because it does not encompass all of Pronto's claims. As recognized by Defendant, a forum selection clause may only be enforced as to those claims which it encompasses. *See Pelican Ventures, LLC v. Azimut S.P.A.*, 2004 WL 3142550 (S.D. Fla. July 28, 2004). Where a forum selection clause does not encompass all of the claims, it is not an abuse of discretion to refuse to enforce the forum selection clause to avoid piecemeal litigation. *Farmland Industries, Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848 (8th Cir. 1986).

CASE NO. 06-21916-CIV-HUCK/SIMONTON

In *Contractor's Mgmt. Systems of NH, Inc. v. Acree Air Conditioning, Inc.*, 799 So.2d 320 (Fla. 2nd DCA 2001), the Second District Court of Appeal affirmed the trial court's decision that the forum selection clause contained in a software licensing agreement did not apply to the appellee's claim that appellant violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). *Id.* at p. 321. The court found that the forum selection clause, by its terms, was limited to disputes "***concerning***" the subject agreement which did not encompass the FDUTPA claim. *Id.* (emphasis supplied).

In the instant case, the Oral Agreement contemplates the delivery of actual software, installation of the software by Defendant, and training on the software by Defendant. Critically, the subject forum selection clause is *not* contained within the Oral Agreement; it is contained within the software license agreement, which is limited on its face to the actual software. The software licensing agreement does not address or even reference the installation and training services that Defendant was supposed to provide pursuant to the Oral Agreement. Also, the software licensing agreement does not address the work Defendant performed and the goods it delivered to Pronto pursuant to the Oral Agreement without an executed purchase order and for which Pronto was simply invoiced. Thus, because the forum selection clause covers only "***legal actions hereunder***," it is limited to claims under the software licensing agreement, and that license agreement only addresses a portion of the services to be provided under the Oral Agreement. Accordingly, at most, the forum selection clause covers claims relating to the failure of the software itself, *not* the failure of Defendant to implement the software as promised. Indeed, this conclusion is consistent with the Purchase Orders imposing implementation of the software as a condition precedent to any future agreement regarding the licensing software

CASE NO. 06-21916-CIV-HUCK/SIMONTON

agreement.  This conclusion is also consistent with the decision reached in *Contractor's Mgmt. Systems of NH, Inc.,* where a similar limited forum selection clause was interpreted.[3]

As set forth in the Complaint, Pronto seeks damages resulting from both the failure of the software <u>and</u> from Defendant's failure to implement the software.  Because the forum selection clause does not encompass Pronto's claims predicated on Defendant's failure to implement the software, venue of this matter should remain in the Southern District of Florida.

Moreover, the forum selection clause in the software license agreement clearly does not encompass Pronto's claims brought under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, et seq. ("FDUTPA").  In *Management Computer Controls, Inc. v. Charles Perry Construction, Inc.*, 743 So. 2d 627 (Fla. 1st DCA 1999), the plaintiff brought contractual claims and a claim under the FDUTPA.  The defendant moved to dismiss the complaint on improper venue grounds because the agreement between the parties provided that all claims "arising out of this Agreement" shall be prosecuted in Tennessee.  *Id.* at 629.  The court held that the forum selection clause did not cover the FDUTPA claim because it did not arise out of the contract.  *Id.* at 632.  Further, the court held that "enforcement of the venue clause [as to the FDUTPA claim] would undermine the purpose of [the statute]," which is "to protect Florida citizens from a different kind of evil."  *Id.*

In the instant case, this court should also find that the forum selection clause in the software licensing agreement does not encompass Pronto's FDUTPA claim, because transferring venue outside of Florida also "would undermine the effectiveness of the statute".  *Id.* at 632.  Accordingly, because the forum selection clause does not encompass Pronto's FDUTPA claim,

---

3 "If the language of a forum clause can be given more than one reasonable interpretation, it should generally be construed against the drafter when there is a dispute as to its meaning."  *Sauder v. Rayman*, 800 So.2d 355, 358-59 (Fla. 4th DCA 2001) (citations omitted).

CASE NO. 06-21916-CIV-HUCK/SIMONTON

this court should exercise its discretion to maintain venue in this district.  *See also Contractor's Mgmt. Systems of NH, Inc.,* 799 So.2d at 321.

D.       **The Northern District Of Illinois Is An Inconvenient Forum**

Even assuming this court finds that the forum selection clause is enforceable, venue of this action should not be transferred to Illinois because Illinois is an inconvenient forum.  As set forth above, in deciding whether to transfer venue pursuant to 28 U.S.C. § 1404(a), the court should consider the convenience of the parties and witnesses, the relative ease of access to sources of proof and the availability of process to compel the presence of unwilling witnesses. *D/H Oil & Gas Co.,* 2005 WL 1153332 at *4.  A consideration of these factors leads to the conclusion that the Southern District of Florida is the only convenient forum for the resolution of this case because the vast majority of the witnesses and evidence are located here.

Specifically, as alleged in the Complaint, the software system was supposed to provide Pronto with a greatly improved software system.  Defendant's failure to implement fully the "improved" software system resulted in Pronto's inability to reconcile daily financial information. *See Segan Dec.,* at ¶ 18.  Proof of the system's failure could require the production of thousands of pages of daily financial reports showing the lack of reconciliation, all of which are located here. *Id.*  Pronto has no less than twelve (12) employees residing in South Florida who have personal knowledge regarding the system's failure and who could be called to testify at trial including, Adam Segan, Diego Torres, Julio Berdote, Andres Castillo, Maria De Castro, among others. *Id.* at ¶ 19.  Defendant's failed computer system was loaded onto Pronto's main computer server located in downtown Miami, Florida, and the computer systems of its 17 retail locations and 22 mobile units all of which are located in Florida. *Id.* at ¶ 20.  Any experts engaged to analyze and test the failed system will necessarily have to travel to Florida.  Pronto

CASE NO. 06-21916-CIV-HUCK/SIMONTON

would be severely prejudiced by the transfer of this matter to Illinois, a venue to which Pronto never agreed. *Id.* at ¶ 17. Accordingly, venue of this matter should not be transferred to Illinois.

## IV. CONCLUSION

Pronto's choice of the Southern District of Florida as the venue for this action should not be disturbed. Pronto never agreed to the forum selection clause which purportedly sets the venue for this dispute in Illinois. Moreover, Illinois is an inconvenient forum to litigate this matter because a majority of the witnesses and documentary evidence are located in South Florida. Accordingly, Pronto respectfully requests that the Court enter an Order denying Defendant's Amended Motion to Transfer Venue, and awarding such other and further relief the Court deems just and proper.

Respectfully submitted,

GREENBERG TRAURIG, P.A.
*Attorneys for Plaintiff Pronto Cash of Florida, Inc.*
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Telephone: (954) 765-0500
Telefax: (954) 765-1477


___s/David O. Batista_____

WILLIAM R. CLAYTON
Florida Bar No. 0485977
*claytonw@gtlaw.com*
DAVID O. BATISTA
Florida Bar No. 175803
*batistad@gtlaw.com*

CASE NO. 06-21916-CIV-HUCK/SIMONTON

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct of the foregoing has been furnished via facsimile and U.S. Mail this 11th day of September 2006 to: **Robert M. Brochin, Esquire**, Morgan, Lewis & Brockius, LLP, 5300 Wachovia Financial Center, 200 South Biscayne Boulevard, Miami, FL 33131-2339.

*s/ David O. Batista*
David O. Batista

atl-fs1\586424v01\9/7/06\85820.010300

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 06-21916-CIV-HUCK/SIMONTON

**PRONTO CASH OF FLORIDA, INC. f/k/a**
**PAYDAY ADVANCE, INC. d/b/a**
**PRONTO CASH,** a Florida corporation,

        Plaintiff,

v.

**DIGITAL CURRENCY SYSTEMS, INC.,** a
foreign corporation

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**DECLARATION OF ADAM SEGAN**

1.    I am the sole owner and President of Plaintiff Pronto Cash of Florida, Inc. f/k/a Payday Advance, Inc. d/b/a Pronto Cash ("Pronto"), and am authorized to make the statements contained in this Declaration. Further, I am over the age of 18 and have personal knowledge of the facts set forth herein or knowledge based upon review of the business records of Pronto made and kept in the ordinary course of its business.

2.    I have reviewed Defendant's Amended Motion to Transfer Venue and Memorandum of Law ("Motion") together with the attached exhibits including the Declaration of Todd Gagerman. Defendant's allegation that Pronto agreed to exclusive venue in Illinois is incorrect.

3.    Pronto is a leading provider of check cashing, money order and foreign currency exchange services throughout Florida and neighboring southern states. Pronto utilizes a check cashing and related computer software system as an integral part of its business operation.

4.      In April 2005, Pronto was considering converting to a brand new system and approached Defendant with regard to same.  Based on Defendant's representations to Pronto that it could provide Pronto with a greatly improved and fully integrated software system, Pronto and Defendant entered into an oral agreement (the "Oral Agreement") for the purchase of the integrated software system, installation of the software system, and training on the software system.  Pronto and Defendant did not discuss a forum selection clause providing for venue in Illinois and the term was not a part of the Oral Agreement.

5.      Upon information and belief, Defendant began working on the new system based upon the terms of the Oral Agreement and prior to providing Pronto with any purchase orders.

6.      Upon information and belief, in certain instances, Defendant performed work and delivered goods to Pronto pursuant to the Oral Agreement without an executed purchase order and simply invoiced Pronto for the cost of the work and goods provided.

7.      Although the purchase orders attached to the Motion ("Purchase Orders") reference a general software licensing agreement, Pronto was never provided with a copy of any software licensing agreement prior to its execution of the Purchase Orders, and the Purchase Orders do not specify that they are presently "subject to" any software licensing agreement.

8.      Although Defendant claims that the software license agreement attached as Exhibit "A" to the Motion was faxed to Pronto, Pronto has reviewed its files and has determined that it did not receive a copy of the document.  Further, the document was not attached to or otherwise provided with the Purchase Orders.

9.      Pronto was not even aware of the forum selection clause until Defendant filed its Motion.

CASE NO. 06-21916-CIV-HUCK/SIMONTON

10.     Moreover, the Purchase Orders specifically provided that Pronto _would_ agree to the terms of a software licensing agreement _upon_ implementation of the subject software.  As set forth in the Complaint, the subject software has not been implemented due to Defendant's failure to deliver a reliable, operational, and integrated system.  The system provided by Defendant is not functional as evidenced by the fact that not even Defendant could reconcile the data generated by its own system.  As a result, Pronto was forced to revert to its old software system.

11.     The software licensing agreement was also not electronically agreed to by Pronto during the attempted installation of the subject software.  The Oral Agreement contemplated the installation of the software onto Pronto's main computer servers located in downtown Miami, Florida, and the computer systems of its retail locations and mobile units.

12.     During the attempted installation of the software onto Pronto's main computer servers, Pronto did not electronically agree to the clickwrap terms.  In fact, because Defendant was the one installing the software, any agreement to the clickwrap terms must have been made by Defendant's representative, not Pronto.  Under these circumstances, Pronto was deprived of any opportunity whatsoever to question the terms of the software license agreement, object to its terms, or offer any alternate terms.

13.     In addition, Pronto: (i) was not provided with an evaluation CD of Defendant's software including a copy of the licensing agreement required for use of the software; (ii) did not execute any purchase orders which expressly stated that the purchase order was presently "subject to" the conditions of a licensing agreement; (iii) was not provided with a software installation CD enclosed in an envelope with the software license agreement printed on the exterior of the envelope; (iv) was not informed that by opening the envelope Pronto agreed to be bound by the

3

terms of the software license agreement; and (v) did not proceed to open any such envelope and retrieve such software.

14.     In regards to the installation of the software at Pronto's retail locations and mobile units, I, as sole authorized representative of Pronto, absolutely did not accept the clickwrap terms.

15.     To the extent some employee at a retail location or mobile unit may have accepted the clickwrap terms, any such employee would not have been authorized to enter into any such agreement on behalf of Pronto.

16.     As the principal, Pronto did not have full knowledge of all material facts and circumstances relating to the alleged acceptance of the clickwrap terms by its employees and in no way intended to ratify the acceptance of the clickwrap terms or its forum selection clause.  Again, Pronto did not become aware that the clickwrap terms were purportedly accepted until Defendant filed the instant Motion.

17.     Venue of this action should not be transferred to Illinois because Illinois is an inconvenient forum.  Pronto would be severely prejudiced by the transfer of this matter to Illinois, a venue to which Pronto never agreed.

18.     Defendant's failure to implement fully the "improved" software system resulted in Pronto's inability to reconcile daily financial information.  Proof of the system's failure could require the production of thousands of pages of daily financial reports showing the lack of reconciliation, all of which are located in South Florida.

19.     Pronto has no less than twelve (12) employees residing in South Florida who have personal knowledge regarding the system's failure and who could be called to testify at trial, including, Adam Segan, Diego Torres, Julio Berdote, Andres Castillo, Maria De Castro, among others.

4

CASE NO. 06-21916-CIV-HUCK/SIMONTON

20.    Defendant's failed computer system was loaded onto Pronto's main computer servers, and the computer systems of 17 retail locations and 22 vehicles – all of which are located in Florida.

I declare under penalty of perjury that the foregoing is true and correct.  Executed at Miami-Dade County, Florida on September 11, 2006.



Erasmo Pineda
Commission #DD149718
Expires: Sep 12, 2006
Bonded Thru
Atlantic Bonding Co., Inc.

_____
ADAM SEGAN

fl-fsl\610357v01\85820.010300

5