

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 06-21916-CIV-HUCK

PRONTO CASH OF FLORIDA, INC. f/k/a
PAYDAY ADVANCE, INC. d/b/a PRONTO
CASH, a Florida corporation,

        Plaintiff,

v.

DIGITAL CURRENCY SYSTEMS, INC.,

        Defendant.
_____/

## DEFENDANT'S REPLY MEMORANDUM
## IN SUPPORT OF AMENDED MOTION TO TRANSFER VENUE

Defendant Digital Currency Systems, Inc. ("Digital" or "DCS"), files this Reply Memorandum in support of its Amended Motion to Transfer Venue ("Transfer Venue Motion") as follows. The undisputed record shows that the parties freely agreed to a valid Illinois forum selection clause, and that the Northern District of Illinois, Eastern Division, is the proper venue to hear this action. In response to Digital's Motion, Plaintiff Pronto Cash of Florida, Inc. ("Pronto") fails to carry its heavy burden to demonstrate that this action should not be transferred pursuant to the parties' contractual choice of venue.

### A.    Factual Background

Pronto does not dispute these facts: (1) Pronto president Adam Segan signed at least three Sales Orders each stating that "Upon implementation of any software contained herein, purchaser agrees to all terms, conditions, and limitations of software licensing agreement," see Declaration of Todd Gagerman ("Gagerman Decl.") ¶ 5 & Composite Ex. B; (2) Pronto's employees installed Digital's software on various Pronto computers which was then used by Pronto, see id. ¶ 7; Declaration of Adam Segan ("Segan Decl.") ¶¶ 14-15, 20; Compl. ¶ 20, and (3) the installation process of Digital's software required the user to read the terms of the

1-MI/584009.4

MORGAN, LEWIS & BOCKIUS LLP
5300 WACHOVIA FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 415-3000

Software License Agreement and to click "I accept the terms in the license agreement" for the installation to proceed. *See* Gagerman Decl. ¶ 7 & Ex. D. As demonstrated below, these uncontested facts are more than sufficient under Florida law to establish that the parties agreed to the Illinois forum selection clause contained in the Software License Agreement.

### B. Standard For Evaluating This Motion To Transfer Venue

Pronto is wrong to assert that should this Court determine the forum selection clause is enforceable, venue should not be transferred if the Court finds that "the Northern District of Illinois is an inconvenient forum." Plaintiff's Response in Opposition to Defendant's Amended Motion to Transfer Venue ("Resp.") at 6, 17. Rather, the standard properly stated requires a showing of "exceptional circumstances . . . so that the contract's purpose would be frustrated by enforcement of the clause," to defeat an otherwise valid venue clause. *XR Co. v. Block & Balestri, P.C.*, 44 F. Supp. 2d 1296, 1299 (S.D. Fla. 1999). *See also Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998) (plaintiff must show that "plaintiff would effectively be deprived of its day in court because of the inconvenience or unfairness of the chosen forum"); Transfer Venue Motion at 4-5.

### C. The Software License Agreement Was Provided On Numerous Occasions To Pronto And Agreed To By Pronto During Installation Of The Software

Pronto's assertion that it did not receive a copy of the Software License Agreement until "after it received Defendant's [Transfer Venue] Motion," Resp. at 8, is a flat misrepresentation of the record, including the Declaration of Adam Segan filed by Pronto. As Segan states, Digital's software was installed on computers including at its main office and in some 17 retail locations and 22 vehicles owned by Pronto, *see* Segan Decl. ¶ 20, meaning that the Software License Agreement was electronically agreed to **each time** the software was installed. Moreover, Pronto's employees installed the software, *see id.* ¶ 15; Gagerman Decl. ¶ 7, and at least some software was installed **before** execution of the Sales Orders (which were signed by Segan in July and December of 2005). *See* Segan Decl. ¶ 6. Pronto does not dispute the fact that clicking "I accept" the terms of the Software License Agreement was necessary to proceed with **each** installation of Digital's software. *See* Gagerman Decl. ¶¶ 6-7.

1-MI/584009.4

2

MORGAN, LEWIS & BOCKIUS LLP
5300 WACHOVIA FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 415-3000

### D. The Terms Of The Software License Agreement Were Incorporated Into The Purchase Orders Signed By Segan

Pronto also does not dispute that its president, Segan, signed Sales Orders on at least three occasions which each state, "Upon implementation of any software contained herein, purchaser agrees to all terms, conditions, and limitations of software licensing agreement." Resp. at 9. Pronto quibbles, without authority, over the definition of "implementation" and argues that the language does not effectively incorporate the terms of the Software License Agreement into the parties' contract because "the software was never functional and Pronto was forced to revert to its old software system," *id.* at 10, but this interpretation cannot withstand scrutiny. First, notwithstanding Pronto's unsupported allegation that Digital's software was "never functional," the term "implementation" is commonly understood to mean "installation" with respect to software. *See, e.g.*, Definition of Implementation, *TechEncyclopedia, available at* http://www.techweb.com/encyclopedia/defineterm.jhtml?term=implementation (last visited Sept. 12, 2006) ("A computer system implementation would be the installation of new hardware and system software."). As already noted, Pronto does not dispute that it installed Digital's software numerous times. Pronto cannot now reasonably claim that these installations failed to incorporate the Software Licensing Agreement into the parties' contract via the terms in the Sales Orders.

Second, Pronto's reading of the language in the Sales Orders leads to the result that the terms of the Software License Agreement could never be incorporated in a dispute over whether Digital's software is "functional." Such result, however, cannot be squared with the warranty language in the Software Licensing Agreement relating to the performance of Digital's software which plainly shows the parties' intention for its terms to apply to claims regarding the software's functionality. *See* Gagerman Decl. Ex. C at p. 2 ("DCS warrants that . . . the Software will conform substantially in accordance with the User Documentation for a period of 90 days from the date of receipt . . . ."). As such, Pronto's narrow reading of "implementation" is unreasonable and should be rejected. *See Whitley v. Royal Trails Prop. Owners' Ass'n*, 910 So. 2d 381, 383, 385 (Fla. 5th DCA 2005) ("When two or more documents are executed by the same parties at or near the same time, in the course of the same transaction, and concern the same

1-MI/584009.4

3

MORGAN, LEWIS & BOCKIUS LLP
5300 WACHOVIA FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 415-3000

subject matter, they will be read and construed together," and "[w]hen provisions in a contract appear to be in conflict, they should be reconciled if possible.").[1]

### E. The Software License Agreement Was A Valid Clickwrap Agreement To Which Pronto Agreed

Setting aside Pronto's argument that the terms of the Software License Agreement were not incorporated into the Sales Orders, Pronto independently agreed to these terms when it clicked "I accept" the Software License Agreement during the software installation process on numerous occasions. Nevertheless, Pronto claims that clicking "I accept" was ineffective because there was "no affirmative act indicating acceptance of the clickwrap terms." Resp. at 11. Pronto is wrong as a matter of Florida law for the following reasons.

#### 1. Pronto's Employees Bound Pronto Under The Doctrine Of Apparent Agency, Even If They Were Not "Authorized" By Segan

First, as Pronto states, Pronto's employees accepted the clickwrap terms during the software installation process at Pronto's retail locations and mobile units. *Id.* at 12. Even assuming for the sake of argument Pronto's claim that Segan never formally authorized his employees to accept the terms, *see id.*, the acts of Pronto's employees were still effective to bind Pronto under the doctrine of apparent agency (also known as agency by estoppel) given that: (1) Pronto created the **reasonable appearance** that its employees were authorized to install Digital's software by making them responsible for installing the software at the retail locations and mobile units, and the software installation process required clicking "I accept" the Software License Agreement (as Pronto does not dispute); (2) Digital **relied in good faith** on the reasonable appearance that Pronto's employees were authorized to install Digital's software on Pronto's computers; and (3) Digital **changed its position in reliance** on this reasonable appearance by proceeding with the terms of its agreement with Pronto and allowing Pronto to

---

[1] Furthermore, Pronto's suggestion that incorporation of a document into a contract requires particular language such as "subject to" is simply untrue under Florida law. *See Mgmt. Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So. 2d 627, 631 (Fla. 1st DCA 1999) ("The contract . . . need not state it is 'subject to' the provisions of the collateral document to incorporate its terms."); *Quix Snaxx, Inc. v. Sorensen*, 710 So. 2d 152, 154 (Fla. 3d DCA 1998) ("magic" words not required for terms of license agreement to be incorporated into purchase orders). Surely, the language in the Sales Orders that "purchaser agrees to all terms, conditions, and limitations of software licensing agreement" sufficiently "reveals an intent to be bound by the terms of" the Software License Agreement. *Mgmt. Computer*, 743 So. 2d at 631.

1-MI/584009.4

4

MORGAN, LEWIS & BOCKIUS LLP
5300 WACHOVIA FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 415-3000

use its software. *See Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1077-78 (11th Cir. 2003) (discussing the elements of apparent agency); *Ja Dan, Inc. v. L J, Inc.*, 898 F. Supp. 894, 900 (S.D. Fla. 1995) (same).

### 2. Pronto Ratified The Acceptance Of The Clickwrap Agreement By Pronto's Employees

#### a. Express And Implied Ratification

Furthermore, even if Pronto's employees did not have apparent authority to bind Pronto to the clickwrap agreement, their acts of acceptance were ratified by Pronto. Under Florida law, a principal may expressly ratify an agent's unauthorized transaction, or it may do so impliedly either by (1) failing to repudiate the transaction by remaining silent, or (2) retaining the benefits of the transaction to which the principal would not otherwise be entitled without affirming the transaction. *See McDonald v. Hamilton Elec., Inc. of Fla.*, 666 F.2d 509, 514 (11th Cir. 1982) (express ratification); *Matter of Mickler*, 50 B.R. 818, 827-28 (Bankr. M.D. Fla. 1985) (ratification by silence); *United Chems., Inc. v. Welch*, 460 So. 2d 540, 541 (Fla. 1st DCA 1984) (ratification by retention of benefits). Here, Pronto expressly ratified its employees' agreement to the Software License Agreement when Segan signed at least three Sales Orders, after software had been installed, each indicating that "Upon implementation of any software contained herein, purchaser agrees to all terms, conditions, and limitations of software licensing agreement," Gagerman Decl. Composite Ex. B. Moreover, both avenues of implied ratification apply because it is undisputed that: (1) Pronto remained silent and never repudiated the acts of its employees in electronically agreeing to the Software License Agreement, *see id.* ¶ 8; and (2) Pronto retained the benefits of these acts by using the software, *see* Segan Decl. ¶¶ 10, 18; Compl. ¶¶ 20-24.

Pronto's claim that it did not impliedly ratify the acceptance by its employees of the Software License Agreement because "Pronto did not have full knowledge of all material facts and circumstances relating to the alleged acceptance of the clickwrap terms," Resp. at 13, is unavailing. Pronto does not dispute the fact that its president – who purports to be the "sole authorized representative of Pronto," Segan Decl. ¶ 14 – signed at least three Sales Orders, each of which state that "Upon implementation of any software contained herein, purchaser agrees to all terms, conditions, and limitations of software licensing agreement." Surely, this statement – which Segan signed off on at least three separate times – constitutes "full knowledge" on

1-MI/584009.4

5

MORGAN, LEWIS & BOCKIUS LLP
5300 WACHOVIA FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 415-3000

Pronto's part that agreement to the terms of the Software License Agreement was a condition of installing Digital's software (and Pronto does not claim that it was unaware that its employees were installing Digital's software). While Pronto insists that "Pronto did not become aware that the clickwrap terms were purportedly accepted until Defendant filed the instant motion to transfer venue," Resp. at 14, this conclusion only follows under Pronto's theory that its employees were acting in an unauthorized manner if Segan did not read the terms of the contract he signed, which Pronto does not claim, and which is not a permissible way of avoiding the language in a contract under Florida law in any event. *See Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 288 (Fla. 1st DCA 2003) ("One should not be permitted to avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it . . . . To sanction such a result would be to render contracts worthless as a tool of commerce.").

### b. Ratification By Bringing Suit Upon The Contract

Moreover, in addition to ratifying Pronto's employees' acceptance of the Software License Agreement by signing the Sales Orders, remaining silent, and by retaining its benefits, Pronto also ratified it by bringing this lawsuit upon its contract with Digital, which includes claims for breach of agreement, breach of warranty, and fraud in the inducement. *See C.Q. Farms, Inc. v. Cargill Inc.*, 363 So. 2d 379, 382 (Fla. 1st DCA 1978) (ratification occurs when the principal "bring[s] suit to enforce promises which are part of the unauthorized transaction or to secure interests which were the fruit of such transaction and to which he would be entitled only if the act had been authorized" (quotation marks and citation omitted)); *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000) (a fraudulent inducement claim for damages "affirms the contract, and thus ratifies the terms of the agreement").

### F. The Forum Selection Clause Encompasses All Of Pronto's Claims

Pronto asserts that even if it agreed to the forum selection clause, it should not be enforced because it (1) applies only to "claims relating to the failure of the software itself," and (2) cannot encompass Pronto's claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA). *See* Resp. at 14-17. By Pronto's own logic, however, the forum selection clause applies to each of Pronto's claims – including the FDUTPA claim – because each claim relates to

1-MI/584009.4

6

MORGAN, LEWIS & BOCKIUS LLP
5300 WACHOVIA FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 415-3000

Pronto's allegation that Digital's software system was "defective." *See* Compl. ¶¶ 20-23. But even assuming that Pronto's claims are somehow unrelated to the alleged "failure" of Digital's software, Pronto's argument that the venue clause does not apply is wrong as a matter of Florida law for the following reasons.

      **1.    Once The Forum Selection Clause Was Incorporated Into The Parties' Contract, It Became Applicable To All Claims Arising Out Of The Contract**

Pronto's unsupported assertion that the venue clause can only apply to claims relating to alleged software failure is counter to the holding of *Management Computer Controls, Inc. v. Charles Perry Construction, Inc.*, 743 So. 2d 627 (Fla. 1st DCA 1999). In that case, the court rejected the plaintiff's argument that a forum selection clause in a software license agreement only applied to licensing disputes, noting that the clause in question contained no "language limiting the venue provision to actions concerning licensing only," and reasoning that "once the license agreement was properly incorporated by reference into the sales contracts, the agreements formed one document, to be read together." *Id.* at 632 (citing *Computer Sales Int'l, Inc. v. State Dep't of Revenue*, 656 So. 2d 1382, 1384 (Fla. 1st DCA 1995)). Thus, the court enforced the venue clause with respect to the plaintiff's claims for breach of contract, negligent misrepresentation, and breach of implied warranty, on the basis that "these claims arose out of the contract." *Mgmt. Computer*, 743 So. 2d at 632. *See also Salco Distribs., LLC v. iCode, Inc.*, 2006 WL 449156 (M.D. Fla. Feb. 22, 2006) (transferring breach of contract and negligent representation claims on the basis of a forum selection clause in a software license agreement); *AC Controls Co. v. Pomeroy Computer Res., Inc.*, 284 F. Supp. 2d 357 (W.D.N.C. 2003) (transferring claims for fraudulent representation, negligent representation, unfair and deceptive trade practices, and breach of warranty on the basis of a forum selection clause in software license agreement); *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 391 (S.D. Tex. 2002) (enforcing venue clause in a software license agreement with respect to a claim for indemnification and rejecting argument that the clause "cover[ed] only specific licensing or payment issues").

Here, as shown above, the forum selection clause also was contained in a software license agreement which was "properly incorporated by reference into the sales contracts" signed by Pronto's president, and therefore applies to all of Pronto's claims, each of which arises out of

1-MI/584009.4
7
MORGAN, LEWIS & BOCKIUS LLP
5300 WACHOVIA FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 415-3000

Pronto's contract with Digital. This result is buttressed by the language in the venue clause, which chooses an Illinois forum "in connection with any legal actions hereunder." Gagerman Decl. Ex. C at p. 3. In Florida, the word "hereunder" in a contract is interpreted to mean "arising out of . . . an agreed term or condition of this contract." *See Hardy v. Sanyei Hong Kong, Ltd.*, 448 So. 2d 1215, 1217 (Fla. 4th DCA 1984). *Accord Picken v. Minuteman Press Int'l, Inc.*, 854 F. Supp. 909, 911-12 (N.D. Ga. 1993) (granting a motion to transfer venue on the basis of a forum selection clause with respect to an action alleging breach of contract and fraudulent inducement claims, and holding that the word "hereunder" in the clause "refers to the relations that have arisen as a result of this contract. To read otherwise would mean that the mere recitation of a form of action would dictate enforceability of a forum selection clause. Such a restrictive reading would frustrate commercial reliance on such clauses which are encouraged"); *William Noble Rare Jewels v. Christie's Inc.*, 231 F.R.D. 488, 491 (N.D. Tex. 2005) (adopting the reasoning of *Picken*, and enforcing a forum selection clause accordingly). As such, all of Pronto's claims should be transferred pursuant to the venue clause, because each claim "arises out of" the contract between the parties. *See Mgmt. Computer*, 743 So. 2d at 632; *Laserdynamics*, 209 F.R.D. at 391.[2]

---

[2] Even if the Court finds that the Software License Agreement was independently agreed to by Pronto as a valid clickwrap agreement, but not incorporated by the signed Sales Orders, the forum selection clause applies to all of Pronto's claims. Both *AC Controls* and *Laserdynamics* involved venue clauses in software license agreements, but there were no additional contractual documents purporting to incorporate the license agreements. In both cases, the court read the venue clause to apply to claims "relating to" or "arising out of" the rights set forth in the licensing agreement. *See AC Controls*, 284 F. Supp. 2d at 358-60 & n.3; *Laserdynamics*, 209 F.R.D. at 391 ("The word 'arising' connotes and denotes an **origin** or genesis of a thing. It follows that the parties intended that those disputes that arise under the [software license] agreement be litigated in the manner proscribed by the forum selection clause. The [software license] agreement has 'patent licensing' as its nucleus. In other words, the spirit of the [software license] agreement contemplates the rights and duties of the parties concerning the DVD software. If any right or obligation in the [software license] agreement is threatened or impaired by an act of the parties or their privities, that act gives rise to a dispute under the agreement." (emphasis in original)). Here, for the reasons discussed above, the "hereunder" language in the forum selection clause renders it applicable to claims arising out of the Software License Agreement, including claims relating to the performance of the software, as Pronto does not dispute. *See* Resp. at 15. Accordingly, the forum selection clause applies to all of Pronto's claims, as they are each based on Pronto's allegation that Digital's software system was "defective." *See* Compl. ¶¶ 20-23.

1-MI/584009.4

8

MORGAN, LEWIS & BOCKIUS LLP
5300 WACHOVIA FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 415-3000

2. **There Is No Obstacle Under Florida Law To Transferring Pronto's FDUTPA Claim, And The FDUTPA Claim Should Be Transferred Because It Arises Out Of The Parties' Agreement**

Finally, Pronto's assertion that the action cannot be transferred because transferring Pronto's FDUTPA claim "would undermine the effectiveness of the statute," Resp. at 16, is incorrect. Indeed, Florida courts have routinely enforced contractual forum selection clauses with respect to FDUTPA claims. *See Farmer's Group, Inc. v. Madio & Co.*, 869 So. 2d 581, 582-83 (Fla. 4th DCA 2004); *SAI Ins. Agency, Inc. v. Applied Sys., Inc.*, 858 So. 2d 401 (Fla. 1st DCA 2003); *World Vacation Travel, S.A. v. Brooker*, 799 So. 2d 410, 412-13 (Fla. 3d DCA 2001). *See also Pelican Ventures LLC v. Azimut S.P.A.*, 2004 WL 3142550, *9-*10 (S.D. Fla. July 28, 2004) (holding that under Florida law, forum selection clause applies to a FDUTPA claim if the FDUTPA claim "arose out of" the contract).[3]

While it is true that some courts have declined to enforce venue clauses as to FDUTPA claims, the two opinions cited by Pronto make it clear that the FDUTPA claims in those cases did not arise out of – and therefore were independent of – the contract containing the venue clause. *See Mgmt. Computer*, 743 So. 2d at 632 ("[The FDUTPA claim] does not arise out of the contract . . . ."); *Contractor's Mgmt. Sys. of NH, Inc. v. Acree Air Conditioning, Inc.*, 799 So. 2d 320, 321 (Fla. 2d DCA 2001) ("[The FDUTPA] claim does not arise from the agreement . . . ."). Here, Pronto's FDUTPA claim plainly arises out of the parties' agreement because it relies entirely on the factual allegations upon which Pronto's other four contractual claims are based. That is, the FDUTPA count explicitly incorporates all of the allegations which also are incorporated into the other four claims, and the FDUTPA count contains **no additional specific factual allegations**. *See* Compl. ¶¶ 25-29. To permit Pronto to avoid the venue clause due to its FDUTPA count, therefore, would be to sacrifice the federal and Florida policies favoring forum selection clauses at the altar of artful pleading. *Cf. Lambert v. Kysar*, 983 F.2d 1110, 1121 (1st Cir. 1993) ("We cannot accept the invitation to reward attempts to evade enforcement of forum selection agreements through artful pleading of [tort] claims in the context

---

[3] These opinions are fully consistent with the numerous Florida decisions applying contractual arbitration clauses to FDUTPA claims. *See, e.g., Beazer Homes Corp. v. Bailey*, __ So. 2d __, 2006 WL 2570564, *8 (Fla. 5th DCA Sept. 8, 2006); *Orkin Exterminating Co. v. Petsch*, 872 So. 2d 259, 261-63 (Fla. 2d DCA 2004); *Stewart Agency, Inc. v. Robinson*, 855 So. 2d 726, 728 (Fla. 4th DCA 2003); *Stacy David, Inc. v. Consuegra*, 845 So. 2d 303, 306 (Fla. 2d DCA 2003); *Aztec Med. Servs., Inc. v. Burger*, 792 So. 2d 617 (Fla. 4th DCA 2001).

of a contract dispute." (citations and internal quotation marks omitted) (alteration in the original)).

### G. Transfer To The Northern District Of Illinois Would Not Be So Inconvenient Or Unfair As To Deprive Pronto Of Its Day In Court

Finally, Pronto fails to make the required showing that transfer to the Northern District of Illinois would be so inconvenient or unfair as to deprive Pronto of its day in court such that non-enforcement of the venue clause is justified. *See Lipcon*, 148 F.3d at 1296. The factors cited by Pronto – the location of Pronto's computers, employees, and some documents in Florida – simply do not amount to making the Northern District of Illinois sufficiently inconvenient to override the forum selection clause, especially in light of the fact that Digital's employees and evidence are located in Illinois. *See* Resp. at 17-18; Transfer Venue Motion at 13-14; *XR Co.*, 44 F. Supp. 2d at 1300 (enforcing a Texas forum selection clause, and stating that, "[i]n opposing transfer, the plaintiffs claim that all witnesses, documents and evidence necessary to **prove** their case are located in Florida. Predictably, the . . . defendants state that all documents, records and witnesses necessary to **defend** the case are located in Texas. Therefore, the Court concludes that, in terms of overall inconvenience, the plaintiff has not carried the burden of showing that the Texas forum is any more inconvenient than Florida" (emphasis in original)).

Dated: September 19, 2006
Miami, Florida

                                /s/
Robert M. Brochin (Fla. Bar No. 0319661)
rbrochin@morganlewis.com
Jared H. Beck (Fla. Bar No. 0020695)
jbeck@morganlewis.com
Morgan, Lewis & Bockius LLP
Counsel for Defendant Digital Currency
  Systems, Inc.
5300 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131-2339
Telephone:   305.415.3456
Facsimile:     305.415.3001

1-MI/584009.4

10

MORGAN, LEWIS & BOCKIUS LLP
5300 WACHOVIA FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 415-3000

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing *Defendant's Reply Memorandum In Support Of Amended Motion To Transfer Venue* was sent by U.S. Mail this 19th day of September, 2006, to the following:

William R. Clayton, Esq.
David O. Batista, Esq.
batistad@gtlaw.com
Greenberg Traurig, P.A.
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Phone:  954.765.0500
Fax:     954.765.1477
Attorneys for Plaintiff, Pronto Cash of Florida, Inc.

Jared H. Beck

1-MI/584009.4

11

MORGAN, LEWIS & BOCKIUS LLP
5300 WACHOVIA FINANCIAL CENTER, 200 S. BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131-2339 • TELEPHONE (305) 415-3000